IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WESLEY WAGNER (01),

    Defendant.

Case No. 17-40097-01-DDC

## MEMORANDUM AND ORDER

On October 4, 2018, a jury convicted defendant Wesley Wagner of receiving and possessing child pornography. Doc. 73. This matter is before the court on Mr. Wagner's Renewed Motion for Judgment of Acquittal (Doc. 76)[1] and Motion for New Trial (Doc. 77). The government has responded to each motion (Docs. 86, 87, 90, & 91). Mr. Wagner's two motions make related arguments, so the court addresses them together.

For reasons explained below, the court denies both motions. In sum, the government has presented sufficient evidence for a reasonable jury to find Mr. Wagner guilty beyond a reasonable doubt. And Mr. Wagner has failed to demonstrate that the ends of justice require a new trial.

**I.    Background**

    **A. Mr. Wagner's Pre-Trial Motions (Docs. 25, 26, 27, & 32)**

In late 2014, the FBI discovered "Playpen"—a website hosting child pornography. The FBI found the website's server, and, in January 2015, seized that server under a warrant. Then, law enforcement officers operated the Playpen site from a location in the Eastern District of

---

[1] During trial, Mr. Wagner moved for judgment of acquittal at the close of the government's case-in-chief. The court denied his motion.

Virginia beginning February 20, 2015, until the FBI permanently disabled the website on March 4, 2015. While law enforcement officers operated Playpen, they deployed a computer program known as the Network Investigative Technique ("NIT"), trying to determine the identity of Playpen's users. The FBI traced one user—"soldiermike"—to an IP address registered to defendant Mr. Wagner. The NIT also revealed that the "soldiermike" username was associated with the email address "mike.jenkins72@yahoo.com" and a computer named "SFC-Gunner." The user using the "soldiermike" username had logged into Playpen for almost nine total hours during the NIT's deployment. The FBI secured a search warrant from this court for Mr. Wagner's residence in White City, Kansas. When the FBI executed the search warrant on September 17, 2015, two agents—Agent Angie Jones and Agent Mike Daniels—interviewed Mr. Wagner. FBI agents also seized a laptop and a cell phone from the Wagner home.

Mr. Wagner moved to suppress the statements he made during that interview because, he contended, the government used unconstitutional methods to secure them. Doc. 27. He also asked the court to dismiss the Indictment (Doc. 1) against him because the FBI's ongoing operation of the Playpen site constituted outrageous conduct. Doc. 32. The court denied both motions. Doc. 48. The FBI's interrogation, the court held, was non-custodial, and Mr. Wagner voluntarily made the statements his motion sought to suppress. *Id.* at 13. And the court rejected Mr. Wagner's argument that the government's operation of the Playpen site amounted to outrageous conduct. *Id.* at 13–15. Mr. Wagner also moved to suppress: (1) evidence that law enforcement officers had gathered during their search of his computer and home; and (2) statements he made when agents executed the search warrant on his home. Docs. 25 & 26. The court again denied both motions. Doc. 47.[2]

---

[2] Docs. 25, 26, and 47 all are sealed, but Mr. Wagner describes these suppression issues in his unsealed Motion for a New Trial (Doc. 77) and supporting brief (Doc. 89).

### B. Mr. Wagner's Trial

The government called two witnesses during Mr. Wagner's trial: (1) Agent Angie Jones, who interviewed Mr. Wagner when she and other agents executed the search warrant on Mr. Wagner's home; and (2) expert witness Amy Corrigan, a forensic examiner with the FBI who specializes in digital forensics. During its case, the government admitted into evidence a played recording of Agents Jones and Daniels's September 17, 2015, interview with Mr. Wagner. During that interview, Mr. Wagner told the agents he had served in the military and had been diagnosed with post-traumatic stress disorder. He also explained that he previously had a pornography addiction and had accessed publicly available websites to view pornography. Mr. Wagner told the agents that persons other than himself and his wife, Brenda Wagner, had lived in their home in the past. He also told them that the laptop they later seized required no password to access its files, though the Wi-Fi service at the Wagner home required a password to use. When agents accessed files on the laptop, they found a "TOR" folder on the computer's desktop. "TOR," short for "The Onion Router," requires users to download special software and input exact website addresses to view web pages anonymously. Also, TOR browsers disguise users' IP addresses. The agents also found child pornography files saved to the computer's desktop. Mr. Wagner denied any knowledge of the TOR browser or child pornography on the laptop.

Ms. Corrigan described how she had located more than 4,000 image and video files on the laptop seized from Mr. Wagner's home that appeared to contain child pornography. The "TOR" folder on the laptop contained a specific website address for webpages that appeared to host child pornography materials, she explained. She found references to the "TOR" network and possible child exploitation materials on the laptop back to the period 2011 to 2015. Ms. Corrigan carefully described one 30-minute sequence of activity on the computer. During that

30 minutes, the laptop's user accessed: a website for Auto Zone, an auto parts retailer; a website for an O'Reilly Auto Parts store; a Yahoo Mail website for the username SFC_Wagner; an email website for the username Mike.Jenkins72; the website "chaturbate.com," which facilitates random chats—usually of a sexual nature—with the username "soldiermike"; and additional searches for car parts.

Both Agent Jones and Ms. Corrigan testified that they didn't know who had accessed child pornography on the laptop in the Wagner home. And Ms. Corrigan testified that the cell phone agents had seized in Mr. Wagner's home contained no references to the email address "mikejenkins@yahoo.com" or the username "soldiermike." But Ms. Corrigan's examination of the cell phone—which had a Bluetooth device name of "Wesley Wagner's G3"—showed YouTube searches and contacts from the social media site Tumblr that were indicative of child exploitation materials.[3] The phone also showed use of the email addresses "swag6482@gmail.com" and "SFC_Wagner@yahoo.com." Finally, Ms. Corrigan testified that the phone contained nude images, possibly of minors.

At the conclusion of the evidence, the jury convicted Mr. Wagner on two Counts: (1) Count One, which charged Mr. Wagner with knowingly receiving child pornography; and (2) Count Two, which charged him with knowingly possessing child pornography. Doc. 73.

## II. Renewed Motion for Judgment of Acquittal (Doc. 76)

### A. Legal Standard

On a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the court must uphold the jury's verdict of guilty if "any rational trier of fact could have found the

---

[3] Ms. Corrigan testified that she found the following YouTube search terms on the cell phone: "child camel toe," "child panties," "child sex doll," "daddy daughter sex," "Lolita sex," and "preteen." Ms. Corrigan also testified that she found the following contacts from the social media site Tumblr on the cell phone: "daddy breeds girls," "dirty girl 10," and "daddy's lover girl."

4

essential elements of the crime beyond a reasonable doubt." *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (citation and internal quotation marks omitted). In other words, the court can reverse a jury's verdict only if it concludes that no reasonable juror could find the defendant guilty. *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015); *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001).

When reviewing a sufficiency of the evidence argument like the one Mr. Wagner makes, the court "must ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [defendant] guilty beyond a reasonable doubt." *Magleby*, 241 F.3d at 1311–12 (citation and internal quotation marks omitted). "[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *Id.* at 1112 (citation and internal quotation marks omitted). And, "where conflicting evidence exists," the court must "not question the jury's conclusions regarding the credibility of witnesses or the relative weight of evidence." *Id.*

Instead, the court simply must "determine whether [the] evidence, if believed, would establish each element of the crime." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)). The court thus must give "considerable deference to the jury's verdict." *Dewberry*, 790 F.3d at 1028 (citation and internal quotation marks omitted). But though the court's review is deferential, the evidence must do "more than raise a mere suspicion of guilt." *Id.* (internal quotation marks and citation omitted). And, any inferences drawn from direct and circumstantial evidence "must be more than speculation and conjecture to be reasonable." *Id.* (citation and internal quotation marks omitted).

5

B.  Analysis

Mr. Wagner argues that the government presented no evidence connecting the email address and username used to access child pornography—"mikejenkins@yahoo.com" and "soldiermike"—with Mr. Wagner himself or his phone.  And—Mr. Wagner contends—the government's failure to adduce evidence about others who may have accessed child pornography on the computer left too many gaps to satisfy the government's burden of proof.  In response, the government argues that the following circumstantial evidence, among other evidence, properly supported the jury's guilty verdict on both Counts against Mr. Wagner:  (1) the variety of methods used to access child exploitation materials; (2) Mr. Wagner's past pornography addiction and use of pornography websites; (3) the files and browsing history Ms. Corrigan found on the laptop in the home; and (4) the usernames, emails addresses, contacts, search history, and images Ms. Corrigan found on the cell phone.

The jury reasonably found Mr. Wagner guilty of the charges against him based on the government's evidence.  Simply put, the government had no duty to present evidence negating every possibility that someone else may have accessed the child pornography at issue.  The court is persuaded that the jurors collectively drew reasonable inferences about the child pornography accessed on the computer in light of the laptop's browsing history and other files on it, as well as the content Ms. Corrigan found on the cell phone.  Those decisions by the jury, resulting in Mr. Wagner's conviction, deserve "considerable deference."  *See Dewberry*, 790 F.3d at 1028.  Because the government has adduced sufficient circumstantial evidence to support the jury's guilty verdict on both Counts against Mr. Wagner, the court denies his Renewed Motion for Judgment of Acquittal (Doc. 76).  *See* Doc. 70 at 20 (Instruction permitting jury to consider circumstantial evidence in reaching the verdict).

### III. Motion for New Trial (Doc. 77)

#### A. Legal Standard

Federal Rule of Criminal Procedure 33 provides that the court may grant a motion for a new trial "if the interest of justice so requires." "A motion for new trial under Rule 33 is not regarded with favor and is granted with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269–70 (10th Cir. 2007); *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). "The defendant has the burden of proving the necessity of a new trial." *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (citing *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994) (further citations omitted)). And, the decision whether to grant a motion for new trial is committed to the trial court's sound discretion. *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1126 (10th Cir. 2009); *Herrera*, 481 F.3d at 1270; *Quintanilla*, 193 F.3d at 1146.

#### B. Analysis

Mr. Wagner makes three arguments supporting his request for a new trial. The court addresses each one separately in the following sections.

##### 1. Did the court err when it sustained the government's hearsay objection during Mr. Wagner's cross-examination of Agent Jones?

First, Mr. Wagner asserts that the court erred when it sustained the government's hearsay objection to defense counsel's cross-examination of Agent Jones. Mr. Wagner contends that the court improperly prohibited defense counsel from questioning Agent Jones about Mr. Wagner's statements to her during their September 17 interview. The court excluded this line of questioning as impermissible hearsay. But, he contends, the court already had admitted these statements by Mr. Wagner because the government had played a recording of the interview for the jury. The court's ruling, he asserts, prevented him from adequately cross-examining Agent Jones about Mr. Wagner's denial that he knew about any child pornography on the laptop seized

7

from his home. In response, the government argues that the court has broad discretion to rule on evidentiary issues. And, even if the ruling was erroneous, the government contends it did not affect Mr. Wagner's substantial rights.

"The trial court has broad discretion in ruling on evidentiary matters." *United States v. Drake*, 932 F.2d 861, 866 (10th Cir. 1991). And, when "reviewing a motion for new trial, the court should 'exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial.'" *Conaway v. Smith*, No. 84-2434-S, 1989 WL 36054, at *1 (D. Kan. Mar. 17, 1989) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984)). The movant for a new trial "must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983). "[N]o error in the admission or exclusion of evidence, and no error in any ruling or order of the trial court or anything done or omitted by the court, can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties." *Conaway*, 1989 WL 36054, at *1 (citing *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1148–49 (10th Cir. 1978)).

Defense counsel argued that his cross-examination of Agent Jones sought to clarify Mr. Wagner's statements to Agent Jones during their September 17 interview. The government properly had offered Mr. Wagner's statements from that interview under the exclusion codified in Federal Rule of Evidence 801(d)(2). That Rule excludes statements made by a party opponent from the definition of hearsay. Fed. R. Evid. 801(d)(2). But that Rule did not apply when Mr. Wagner sought to offer his own out-of-court statements to prove their truth. So, the court sustained the government's objection to this questioning. *See Michigan v. Lucas*, 500 U.S. 145, 149 (1991) ("[T]rial judges retain wide latitude to limit reasonably a criminal defendant's right to

8

cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (internal quotations omitted)).

But even if the court had erred by sustaining the objection, Mr. Wagner fails to demonstrate how this ruling affected his substantial rights. Defense counsel's questioning revisited statements Mr. Wagner made during his September 17 interview. The evidence already had provided the jury with the opportunity to consider Mr. Wagner's statements. And, as the government argues, the jury asked during deliberations for a copy of Mr. Wagner's recorded interview with the agents. *See* Docs. 72 (jury's request for copy of the September 17 interview recording to play during deliberations), 72-1 (court's response granting request). In short, any assumed error in the court's evidentiary ruling does not amount to a defect affecting Mr. Wagner's substantial rights. The court denies Mr. Wagner's new trial motion on this ground.

### 2. Did the court err in its rulings on Mr. Wagner's pre-trial suppression motions?

Second, Mr. Wagner argues that the court's rulings on each of his pre-trial suppression motions erred. Mr. Wagner properly preserved his continuing objections to these rulings— objections that the court recognized at trial, but overruled during the parties' pre-trial conference on October 2, 2018. Mr. Wagner recognizes—and the court already has relied upon— controlling Tenth Circuit precedent holding that the good faith exception applied to the FBI's reliance on the NIT warrant, thus barring suppression. *See United States v. Workman*, 863 F.3d 1313, 1321 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1546 (2018) (finding good faith exception applied after assuming, but not deciding, the NIT warrant was invalid). Mr. Wagner nevertheless contends that our Circuit wrongly decided *Workman* and thus seeks to present that question again. Certainly, Mr. Wagner has the right to renew that issue. But here, in this court, the court

will not deviate from *Workman*'s holding. Mr. Wagner hasn't identified any meaningful difference between that case and this one.

In his new trial motion, Mr. Wagner incorporates all the arguments his suppression motions contain. But he provides no new basis for the court to grant his new trial motion, though he has the burden to show why a new trial is warranted. The court already has explained its reasoning for denying Mr. Wagner's suppression motions in two separate orders. *See* Doc. 47 (concluding that: (1) FBI agents reasonably relied on the NIT warrant, and the good faith exception barred suppression of evidence they collected when executing the warrant; and (2) the search warrant for Mr. Wagner's home was valid); Doc. 48 (concluding that: (1) the FBI's interrogation was non-custodial, and Mr. Wagner voluntarily made the statements he sought to suppress; and (2) the government did not engage in outrageous conduct when it continued to operate the Playpen site). The Tenth Circuit's holding in *Workman* is still binding authority. And Mr. Wagner has not shown that the "interest of justice" requires the court to revisit the reasons it denied his suppression motions. Fed. R. Crim. P. 33. The court thus denies Mr. Wagner's new trial motion on this second ground.

### 3. Do the errors that Mr. Wagner asserts cumulatively require a new trial?

Finally, Mr. Wagner argues that even if neither of his asserted errors, discussed above, singularly warrants a new trial, they require, when combined, a new trial. "A cumulative-error analysis aggregates all errors found to be harmless and 'analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990)). "There must be at least two errors before [the

court] may find cumulative error." *United States v. Willis*, 826 F.3d 1265, 1280 (10th Cir. 2016) (citing *United States v. Thomas*, 749 F.3d 1302, 1307 (10th Cir. 2014)).

Above, the court only assumes it harmlessly erred when it sustained the government's hearsay objection to Agent Jones's cross-examination. And the court determines it did not err in its rulings on Mr. Wagner's pre-trial suppression motions. A single, assumed error in an evidentiary ruling cannot amount to prejudicial error, as required by the collective error standard. The court thus denies Mr. Wagner's new trial motion on this third ground.

## IV. Conclusion

The court denies Mr. Wagner's Renewed Motion for Judgment of Acquittal (Doc. 76) because the jury reasonably could conclude from the evidence presented at trial that Mr. Wagner had received and possessed child pornography. The court also denies Mr. Wagner's Motion for New Trial (Doc. 77) because the court's evidentiary ruling did not err, nor did its rulings on Mr. Wagner's pre-trial suppression motions. And even if the court had erred in its evidentiary ruling, such an error, alone, falls well short of one requiring the court to grant a new trial.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Wesley Wagner's Renewed Motion for Judgment of Acquittal (Doc. 76) is denied.

**IT IS FURTHER ORDERED THAT** defendant Wesley Wagner's Motion for New Trial (Doc. 77) is denied.

**IT IS SO ORDERED.**

**Dated this 12th day of February, 2019, at Kansas City, Kansas.**

                                        **s/ Daniel D. Crabtree**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**